UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                      :

DR. CHRISTIAN GERLOFF,               :
                                        :

                        Plaintiff,    :            12 Civ. 9404 (LGS)
                                        :

          -against-              :           OPINION & ORDER
                                        :

HOSTETTER SCHNEIDER REALTY, now  :
known as Pier Commercial Real Estate LLC, and  :
HS ASSET MANAGEMENT GROUP LLC,  :
                                        :

                   Defendants.  :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Christian Gerloff brings this action as the insolvency receiver of Escada AG

("Escada").  Defendants Pier Commercial Real Estate LLC ("Pier") and HS Asset Management

Group ("HS Asset") move to dismiss all claims for failure to state a claim pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, Defendants'

Motion to Dismiss is granted without prejudice.

**I.  Background and Facts**

      Plaintiff is the insolvency receiver of Escada, a German corporation.  Plaintiff asks this

court to apply German insolvency law and void a payment made on behalf of Escada to

Defendants two months before Escada filed its insolvency petition.  Plaintiff's Amended

Complaint pleads two alternative sets of facts, which is permissible under Rule 8 of the Federal

Rules of Civil Procedure.  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 585

(2d Cir. 2005) ("A party may 'plead two or more statements of a claim, even within the same

count, regardless of consistency.'") (quoting *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d

Cir. 1994)).[1]  The facts below are as alleged in the Amended Complaint except where noted.

**A.  Facts Alleged for the First Claim for Relief against Pier**

In June 2009, Escada entered into a contract to sell all of the shares of one of its subsidiaries, BiBA GmbH ("BiBa"), to a company called GELCO GmbH & Co. KG ("Gelco"). Escada directed Gelco to direct some cash consideration for the shares of BiBa directly to creditors and other parties rather than to Escada.  One of those parties was Pier.  On July 24, 2009, Gelco wire-transferred €1,621,126.76 to an account maintained by Pier.  On August 13, 2009, Escada entered insolvency proceedings in Germany.  The Amended Complaint alleges that the transfer was gratuitous under § 134 of the German Insolvency Act.[2]

**B.  Factual Background for the Second Claim for Relief against HS Asset**

On December 27, 2012, Plaintiff filed its Original Complaint in this action against Pier. Pursuant to the Individual Rules of District Judge Marrero, then presiding over this case, counsel for Defendants sent Plaintiff a letter, which argued that the claims in the original complaint were without merit.  In response, Plaintiff amended its complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure.  The Amended Complaint, filed on April 10, 2013, added HS Asset as a Defendant.

In the Second Claim for Relief, the Amended Complaint alleges that after Gelco transferred the funds to Pier, Pier transferred that money to HS Asset.  On or about July 24, 2009,

---

[1] The Amended Complaint originally pursued claims against Pier and HS Asset pursuant to German Insolvency Act § 131, which allows a party to avoid preferential transfers by debtors to creditors.  (*See generally* Expert Report, Question 1).  In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Plaintiff explicitly abandoned claims under § 131. Plaintiff therefore has abandoned all claims that rely on allegations that Defendants were Plaintiff's creditors.  Accordingly, the Court does not address factual scenarios alleged in the Amended Complaint based on Defendants' alleged status as Plaintiff's creditors.

[2] Insolvenzordnung [InsO] [Insolvency Act], Oct. 5, 1994, Bundesgesetzblatt [BGBl.] I 2866, as amended, § 134.  An English translation of may be found at http://www.gesetze-im-internet.de/englisch_inso/englisch_inso.html.

HS Asset entered into an "Owner-Manager Agreement" with Escada (USA), Inc. ("Escada USA"), a subsidiary of Escada.  Pursuant to the agreement, Escada USA allegedly retained HS Asset to act as a general contractor ("construction manager") for renovations of store locations in the United States, and agreed to pay HS Asset a 2.5% fee of the amounts HS Asset disbursed to contractors.  HS Asset distributed the funds to various service providers.  The Second Amended Complaint alleges that the money transferred to HS Asset is property of the Escada estate and is voidable as a gratuitous benefit under § 134 of the German Insolvency Act.

The Complaint asserts a Third Claim for Relief for equitable relief based on the German Civil Code.

## II.  Standard of Review

## A.  Motion to Dismiss

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  The Court may consider, in addition to the allegations contained in the complaint, "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of

3

action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal punctuation omitted); *see also* Fed. R. Civ. P. 8(a)(2).

Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims. Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999); *accord S.E.C. v. Gabelli*, 653 F.3d 49, 60 (2d Cir. 2011), *rev'd on other grounds,* 133 S.Ct. 1216 (2013).

**B.  Determination of Foreign Law**

The parties agree that this dispute is governed by German insolvency law.  Under Rule 44.1 of the Federal Rules of Civil Procedure, a court's determination of the content of foreign law is not a finding of fact but a "ruling on a question of law."  In addition to whatever the parties may submit, a court may examine a wide array of materials to determine foreign law, but it is under no obligation to do so.  *See Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir. 1978) ("Rule 44.1 of the Federal Rules of Civil Procedure permits parties to present information on foreign law, and the court may make its own determination of foreign law based on its own research, but it is not

mandatory that it do so."); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447,

458 (E.D.N.Y. 2007) (collecting cases).

On December 11, 2013, the Court informed the parties that it intended to hire an expert in

German bankruptcy law to assist in this decision.  On January 8, 2014, the Court retained

Professor Doctor Peter von Wilmowsky, who holds the Chair for Civil Law, Bankruptcy Law,

European and International Business Law at the Johann Wolfgang Goethe University Frankfurt

am Main.  Initially, the Court had identified Prof. Dr. von Wilmowsky as an expert pursuant to

Rule 706 of the Federal Rules of Evidence.  Prof. Dr. von Wilmowsky is, more accurately, a

"technical advisor" to the Court, because he is not presenting evidence.  *See Reilly v. United*

*States*, 863 F.2d 149, 155-56 (1st Cir. 1988); *In re Joint E. & S. Dists. Asbestos Litig.*, 151 F.R.D.

540, 544 (E.D.N.Y. 1993) ("The requirement for formal depositions of Rule 706 experts has not

been literally enforced.  Where the expert appointed under Rule 706 does not testify at trial the

expert's role has been characterized as that of 'technical advisor' to the court and depositions

have not been required."); *see generally* 29 Charles Alan Wright, et al., *Federal Practice &*

*Procedure, Federal Rules of Evidence* § 6303 (1st ed.1997).  His report to the Court, and the

questions the Court posed to him, are attached to this Opinion and Order as Appendix A and

Appendix B.

**III.  Discussion**

**A.  Timeliness of the Claims Against HS Asset**

Defendants move to dismiss the Second Claim for Relief against HS Asset as untimely

under the statute of limitations pursuant to German law.  This argument fails for two reasons.

First, it is not evident from the face of the Complaint that the statute of limitations has run.

Second, because the claims against HS Asset relate back to Plaintiff's Original Complaint, the

claims against HS Asset are timely.

### 1. Statute of Limitations Under German Law

Under German Civil Code § 199(1),[3] the limitations period begins to run at the end of the year in which a claim arose and the plaintiff knew the facts giving rise to the claim or would have known if not for his gross negligence in failing to learn the facts. The statute of limitations for an avoidance claim under the German Insolvency Act is three years. German Insolvency Act § 146(1). The Amended Complaint was filed on April 10, 2013. Since the insolvency receiver is the person whose knowledge is required to commence an action, the limitations period cannot begin before his appointment. (Question 5, Section I, p. 63). Dr. Gerloff was appointed on November 1, 2009, and therefore the earliest date on which the statute of limitations could have begun to accrue is December 31, 2009. (Question 5, Section I, p. 63). Defendants argue that, accordingly, the three-year statute of limitations had run as to HS Asset when Plaintiff first sued HS Asset in the Amended Complaint filed in April 2013.

The statute of limitations cannot begin to accrue, however, until the plaintiff had actual or constructive knowledge of the facts that made the transaction voidable under German law. (Question 5, Section I, p. 63). In order to impute constructive knowledge to a plaintiff, a defendant must show gross negligence, which means a plaintiff ignored all signs that unmistakably pointed to the relevant facts. (Question 5, Section I, p. 63-64). Nothing in the Amended Complaint suggests that Dr. Gerloff learned, or would have learned but for gross negligence, the necessary facts to bring claims against HS Asset prior to January 1, 2010. Accordingly, the statute of limitations, at least for purposes of this motion to dismiss, did not

---

[3] Bürgerliches Gesetzbuch [BGB] [Civil Code], Aug 18, 1896, Reichsgesetzblatt [RGBL] 195, as amended, § 199. An English translation is available at http://www.gesetze-im-internet.de/englisch_bgb/englisch_bgb.html.

begin to run until December 31, 2010, and the action is timely.

Defendants argue that the Court can take judicial notice of Plaintiff's filings in the bankruptcy proceedings of Escada USA, a subsidiary of Escada. Defendants assert that these filings establish conclusively that Plaintiff knew or had constructive knowledge in 2009 of all facts necessary to bring an avoidance action against HS Asset under § 134 of the German Insolvency Act. Defendants claim that Dr. Gerloff knew that HS Asset and Escada USA had a contractual agreement, and filed a Proof of Claim for $37,776,020.33, which he described as a "trade claim/company loan," in the Escada USA bankruptcy proceedings. That Dr. Gerloff filed a Proof of Claim in the Escada USA bankruptcy proceeding is judicially noticeable, but nothing in that document suggests that Dr. Gerloff knew that HS Asset had received or had any involvement with the funds. The Proof of Claim establishes, at most, knowledge that Escada did not receive money it was owed by Escada USA. Also, the avoidance claims under §§ 133 and 134 require knowledge of the debtor's state of mind or intent at the time of the transfer. *See infra* Sections III.B-C. On the face of the Amended Complaint, it is not evident when Plaintiff knew or should have known the debtor's (Escada's) state of mind. On a motion to dismiss, dismissal is appropriate only "if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). Accordingly, the Motion to Dismiss on the basis of the statute of limitations is denied.

### 2. Relation Back

Even if HS Asset could show that the statute of limitations had run as of April 10, 2013, when the Plaintiff filed the Amended Complaint, the Amended Complaint would relate back to the Original Complaint. In the original complaint, Plaintiff brought claims only against Pier, alleging that the transfer of funds could be avoided under German Insolvency Code § 131.

Defendant Pier then wrote a letter to Plaintiff explaining that Pier was not the actual recipient of the funds, which were immediately transferred to HS Asset, and that HS Asset received the funds as part of a contract with Escada USA.  Plaintiff amended its Original Complaint to add HS Asset in its Second Claim for Relief, and assert similar claims against HS Asset arising out of the same transfer of funds from Gelco to Pier.

Where a new defendant is added, Rule 15(c)(1)(c) of the Federal Rules of Civil Procedure governs relation back to an original complaint.  Claims against a new party may be added where the conduct at issue arose out of the same transaction or occurrence as that "set out – or attempted to be set out – in the original pleading" and the party to be brought in:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15 (c)(1)(C).  Defendants argue that Plaintiff did not make a mistake in failing to add HS Asset, but instead chose not to add HS Asset to the Original Complaint.  It is true that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010).  The relevant inquiry under Rule 15(c), however, is not whether a plaintiff "knew or should have known the identity" of the proper defendant, but "what the prospective *defendant* knew or should have known." *Id*. at 548 (emphasis in original).  Given that defense counsel, who represents both Defendants, first informed Plaintiff of HS Asset's involvement in the transfer, it is clear that Defendant HS Asset knew Plaintiff's claims could have or should have been directed against it but for a mistake. *See Bishop v. Best Buy Co. Inc.,* No. 08 Civ. 8427, 2010 WL

4159566, at *3 (S.D.N.Y. Oct. 13, 2010) (Sand, J.) (imputing knowledge based on overlap in counsel). Moreover, Defendants point to "no strategy that [Plaintiff] could reasonably" have been pursuing by naming only Pier in the Original Complaint, which Defendants argue was a mere conduit for funds to HS Asset. *See Krupski*, 560 U.S. at 555.

Plaintiff's failure to understand that there was potentially a different recipient of the Gelco funds, and that the money Gelco owed to Escada was sent by Pier to HS Asset, a party in contract with Escada USA, is a mistake under *Krupski*. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 289 F.R.D. 401, 406 (S.D.N.Y. 2013) ("There is no requirement, however, that an amendment must replace a party in order to establish a mistake warranting relation back."). Defendants' argument that Plaintiff's sophistication distinguishes the case at bar from *Krupski* is unavailing. Nothing in the case law or in the text of Rule 15(c) limits its applicability to unsophisticated plaintiffs, particularly in light of the Supreme Court's repeated statements in *Krupski* that it is a defendant's knowledge that is relevant for Rule 15(c) analysis. *See generally Krupski*, 560 U.S. 538. Accordingly, even if Plaintiff's claims against HS Asset were time barred under German law, they would relate back to the Original Complaint.

**B. The Claims Under § 134 of German Insolvency Act**

The First and Second Claims for Relief against Pier and HS Asset respectively seek to avoid the transfer of funds based on § 134 of German Insolvency Act. Defendants move to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because both claims fail to state a claim for relief, Defendants' Motion is granted.

Section 134 of the German Insolvency Act states that a transfer made by a future insolvency debtor may be voidable if it is a gratuitous benefit. The statute translated to English reads:

(1) A gratuitous benefit granted by the debtor may be contested unless it was made earlier than four years prior to the request to open insolvency proceedings.

(2) If such benefit comprises a usual casual gift of minor value, the gift may not be contested.

(Question 2, Section A.III, p. 21).[4]  German law has developed a number of tests to determine whether a transfer was "gratuitous."  (Question 2, Section A.I, p. 16).

**1.  The Basic Test**

Under the basic test, a transfer is gratuitous, if the debtor (1) received nothing in exchange for the transfer ("no consideration"), *or* (2) received less than equivalent value for the transfer ("no equivalent consideration").  Whether a debtor received consideration or equivalent consideration is determined by the agreement between the debtor and the transferee with regard to the transfer.  (Question 2, Section A.I.1, p. 16).  There is no consideration only if the agreement provides that the transferee owes nothing to the debtor for the transfer.  There is no equivalent consideration if the agreement provides that the transferee owes the debtor something for the transfer, but the value of this consideration or obligation is less than what was transferred.  A transfer may be gratuitous under these tests even if the parties to the transfer are unaware that the consideration is less than equivalent value.  (*Id*.).  Under the basic test, the existence and terms of an agreement between the debtor and transferee are critical.

---

[4] This provision is roughly equivalent to 11 U.S.C. § 548(a)(1)(B)(i) of the U.S. Bankruptcy Code, which allows a bankruptcy trustee to avoid any transfer where the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."  However, the German counterpart does not contain the requirements of § 548(a)(1)(B)(ii), which requires that the debtor was insolvent, would be left undercapitalized by the transfer, would be made insolvent by the transfer, or that the transfer was made to an insider of the debtor.  (Question 2, Section A, p. 16).

### 2. Unjust Enrichment

Under a special test, a transfer may be found to be gratuitous in the absence of an agreement between the debtor and the transferee if (1) the debtor knew it had no contractual or other right to receive equivalent value for the transfer, and (2) nevertheless made the transfer. The debtor's transfer with this knowledge extinguishes any right to restitution or claim for unjust enrichment, thus rendering the transfer gratuitous and therefore voidable under § 134. (Question 2, Section A.I.2, p. 17-18). In shorthand, under this test, the debtor's intention to make a gift is essential.

### 3. Payment to a Third Party Creditor

Another special test based on "third party debts" may result in the finding of a gratuitous transfer in the absence of an agreement between the debtor and transferee. (Question 2, Section A.I.3, p. 18). This test is satisfied where (1) the transferee is not the debtor's creditor and there is no contractual relationship between the debtor and the transferee; (2) the debtor makes the transfer on behalf of a third party (as a third-party debtor) for its debt to the transferee (as third-party creditor); and (3) the transferee has received more than the "true value" of its right to payment from the third-party debtor. (Question 2, Section A.I.3, p. 18-19). The central issue is the "true value" of the transferee's right to payment at the time the transfer was made. For example, the transferee may have received 100 cents on the dollar of the third-party debtor's obligation. However, the "true value" of the obligation might be much less if, for example, the third-party debtor were insolvent. If the amount of the transfer exceeds the "true value" of the right to payment, then the amount of the transfer in excess of the true value is voidable. (Question 2, Section A.I.3, p. 19).

### 4.  Transfer to Pier

The First Claim for Relief fails to allege sufficient facts to state a claim for relief.  The Amended Complaint does not plead any facts relating to an agreement, and therefore, does not plead a claim under the basic test for a gratuitous transfer under § 134 of the German Insolvency Act.  The Amended Complaint also does not adequately plead a claim under the special test for unjust enrichment because it does not plead that Escada, the transferor, had any intent to make a transfer that lacked a legal basis (i.e., a gift).  The third-party debtor "special test" does not apply to the First Claim for Relief.

### 5.  Transfer to HS Asset

The Second Claim for Relief, which alleges that Pier immediately transferred the funds to HS Asset, also fails to state a claim under § 134, even assuming HS Asset could be deemed Escada's transferee.  Under the basic test, the complaint must plead that Escada and HS Asset agreed that Escada made the payment without any corresponding obligation by HS Asset, or a corresponding obligation that was worth less than the amount transferred.  The Amended Complaint does not plead either scenario here, as it has not pleaded any agreement between Escada AG and HS Asset.

The Second Claim for Relief does not state a claim under the unjust enrichment special test.  The Amended Complaint does not allege the absence of any contractual relationship between Escada and HS Asset, nor that Escada knew that the transfer lacked a contractual basis and made it anyway (i.e., intended it as a gift).

Finally, the Second Claim for Relief also fails to state a claim for relief under the "third-party debtor" test.  To state a sufficient claim, the complaint would have to allege factual matters

based on knowledge, or information and belief, (and not merely assert the elements in a

conclusory fashion) that plausibly show:

    1) Escada made a payment to HS Asset;

    2) HS Asset was not Escada's creditor nor was Escada contractually or otherwise

    bound to make the payment to HS Asset;

    3) HS Asset (as third-party creditor) was owed money by Escada USA (as third-

    party debtor);

    4) Escada made the transfer to HS Asset on behalf of its subsidiary Escada USA

    for its obligation to HS Asset; and

    5) Escada USA was insolvent and therefore the amount of the transfer from

    Escada to HS Asset exceeded the "true value" of Escada USA's obligation to HS

    Asset, and because Escada USA was insolvent, HS Asset received from Escada

    more than it would have received had it been paid directly by Escada USA as a

    debtor in a U.S. bankruptcy.  (Question 2, Section B.II.2.b.iii, p. 37).

The Amended Complaint merely pleads that the direct Gelco payment, which eventually was

transferred to HS Asset, was gratuitous, but does not plead the second, fourth and fifth elements

described above.

      The Amended Complaint also failed to allege sufficient detail regarding the relationship

among Pier, HS Asset, and Escada USA.  In order to state a claim against HS Asset, even

Plaintiff's expert admits that the complaint must allege facts tending to show that, when Pier

accepted the funds, it was acting as a fiduciary of HS Asset.  (Question 2, Section B.II.2.a.ii, p.

31).  The complaint also must plausibly allege that HS Asset was not also acting as a fiduciary of

Escada USA when it accepted the funds transfer as a general contractor, otherwise the Court

would be forced to conclude that the proper claim lies against Escada USA.  (Question 2, Section B.II.2.a.iii, p. 32).  Accordingly, Defendants' Motion to Dismiss the First and Second Claims for Relief is granted.

**C.  The Claims Under § 133 of the German Insolvency Act**

Defendant moves to dismiss any claims under § 133 of the German Insolvency Act. Plaintiff referenced this provision in its Memorandum in Opposition, but not the Amended Complaint, arguing that the transfer of funds to Pier or HS Asset is avoidable pursuant to German Insolvency Law § 133.  It is "axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011) (quoting *Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992, 2009 WL 5171737, at *5 n.6 (S.D.N.Y. Dec. 30, 2009)).  To the extent § 133 claims are properly before the Court, they are dismissed because the Amended Complaint fails to state a claim upon which relief could be granted.

Section 133 of the German Insolvency Act governs fraudulent conveyances and provides in relevant part:

> A transaction made by the debtor during the last ten years prior to the request to open insolvency proceedings, or subsequent to such request, with the intention to disadvantage his creditors may be contested if the other party was aware of the debtor's intention on the date of such transaction. Such awareness shall be presumed if the other party knew of the debtor's imminent insolvency, and that the transaction constituted a disadvantage for the creditors.

There are four elements to a claim under § 133.  (Question 3, Section A, p. 45).  The first requirement is a "detriment" to the unsecured creditors, which is any hindrance to their efforts to collect from the debtor.  (Question 3, Section A.I, p. 45).  Second, the debtor must intend to cause harm to its unsecured creditors.  (Question 3, Section A.II, p. 45).  A court may infer intent by the

14

debtor if the debtor was near insolvency, aware of its financial situation, and the detrimental transaction diminished the value of the debtor's property.  (Question 3, Section A.II, p. 46). Third, the transferee-defendant must know of the debtor's intent to cause harm to its creditors. (Question 3, Section A.III, p. 46).  A court may infer awareness on behalf of the transferee if it knew of the debtor's imminent insolvency, and that the transaction would harm the unsecured creditors.  (Question 3, Section A.III, p. 46).  Fourth, the transaction must have occurred within ten years of the debtor's insolvency petition.[5]

Here, the facts alleged in the Amended Complaint do not state a claim under § 133 because none of the allegations leads to the inference that Pier or HS Asset knew of Escada's imminent insolvency or that either Defendant knew that the transfer would harm Escada's unsecured creditors.

### D.  The Third Claim for Relief

Defendants move to dismiss the third claim, an equitable claim for return of the transferred funds, for failure to state a claim under German law.  Defendants also contend that Plaintiff attempts to change its pleadings regarding its equitable claim in its Memorandum in Opposition.  Because German law applies, and because the Amended Complaint does not state a claim under § 242 of the German Civil Code, Defendants' motion to dismiss the third claim is granted.

While the parties agree that German law governs the avoidance claims, Plaintiff contends that its equitable claim for "money had and received" is not based on German law, but on the

---

[5] Section 133 roughly parallels 11 U.S.C. § 548(a)(1)(A) of the U.S. Bankruptcy Code, which allows a trustee to avoid any transfer made with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  However, the German Insolvency Act also requires the transferee to have knowledge of the debtor's intent.

equitable law of the U.S. state of Georgia.  Georgia is where Pier and HS Asset maintain their principle place of business and where the funds were transferred by Gelco.

A claim for money had and received is an equitable claim for unjust enrichment.  *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1366 n.26 (N.D. Ga. 2012); *Stampede Presentation Prods., Inc. v. Productive Transp., Inc.*, No. 12 Civ. 491, 2013 WL 2245064, at *7 (W.D.N.Y. May 21, 2013).  A District Court sitting in diversity in New York applies New York choice-of-law analysis to unjust enrichment claims.

Whether to apply to an unjust enrichment claim New York's "center of gravity" choice of law test applicable to contract disputes, or New York's "interest analysis" test applicable to tort claims, is a matter of debate among district courts in this Circuit.  *Compare Burns v. Delaware Charter Guarantee & Trust Co.*, 805 F. Supp. 2d 12, 27, n.4 (S.D.N.Y. 2011) *and Hughes v. LaSalle Bank, N.A.*, 419 F. Supp. 2d 605, 617 (S.D.N.Y.2006), *vacated on other grounds*, No. 06-3778, 2007 WL 4103680 (2nd Cir. Nov. 19, 2007), *with In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148 (S.D.N.Y. 2008).  In this case, the Third Claim for Relief is a claim for unjust enrichment based on a fraudulent conveyance by a debtor.  Fraudulent conveyance is more like a tort than a breach of contract for choice of law purposes.  *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (parties agreed that fraudulent conveyance is a tort to which interest analysis applies).  Because the claims in this case sound more in fraud than in contract, this Court applies New York's interest analysis to its choice of law decision.  *Cf. Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001) (applying the center of gravity test to a quantum meruit claim where a claim for work commission sounded "more in contract than in tort.").

16

"Two separate inquiries are . . . required to determine [which forum has] the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994).   Where the law is conduct regulating, "the law of the place of the tort governs." *Id.* at 522; *see also In re Hydrogen, L.L.C.*, 431 B.R. 337, 357 (Bankr. S.D.N.Y. 2010).   Here, despite Plaintiff's contentions, the actions that give rise to any equitable claim occurred in Germany – where Escada is located and likely committed any wrongful acts. Moreover, to the extent that the transfer was inequitable, it was inequitable to Escada's unsecured creditors whose rights are determined under German insolvency law.

Applying German law to the Third Claim for Relief leads to German Civil Code § 242, which codifies the principle of good faith.  (Question 6, Section I, p. 68).   The rule is utilized when "other legal rules lead to results that are unbearable, as they violate basic notions of justice and fairness."  (Question 6, Section I, p. 68).   The English translation of § 242 provides: "An obligor has a duty to perform according to the requirements of good faith, taking customary practice into consideration."  (Question 6, Section II, p. 68-69).   The Amended Complaint does not plead facts that would give rise to a good faith claim under German Civil Code § 242.   There is no allegation that Defendants were "obligors" to Escada or that they failed to perform any obligations to Escada in good faith.   Accordingly, the Third Claim for Relief is dismissed.

**IV.  Conclusion**

Defendants' Motion to Dismiss is GRANTED.   Plaintiff is granted leave to amend its complaint within 30 days of this order.   In addition to discussing the matters discussed above, the second amended complaint shall include detailed subject matter jurisdiction allegations, including for any limited liability company, partnership or trust, the citizenship of each of the entity's

17

shareholders, members, partners and/or trustees.  Defendants shall file an affidavit providing this information within one week of the date of this order.  In the event that Plaintiff files a second amended complaint, the parties shall appear for a status conference on May 1, 2014, at 11:10 a.m. and shall file by April 29, 2014, a joint Proposed Case Management Plan and Scheduling Order as provided in the Court's Individual Rules.

The Clerk of the Court is directed to close the motion at Docket # 12.


Dated: March 20, 2014
       New York, New York


LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE